UNITED STATES DISTRICT COURT　　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

---

JEAN AZOR,

                      Petitioner,

        - versus -

THOMAS GRIFFIN, Supt., MS. RIVERA,
AP. Aide, DOWNSTATE CORRECTIONAL
FACILITY, State of New York Executive
Division of Parole,

                      Respondent.

MEMORANDUM
AND ORDER
12 CV 5998 (JG)

---

A P P E A R A N C E S :

    JEAN AZOR
        # 11-A-0564
        Watertown Correctional Facility
        23147 Swan Road
        Watertown, New York 13601-9340
        *Petitioner*, *Pro se*

    ERIC T. SCHNEIDERMAN
        Attorney General of the State of New York
        120 Broadway
        New York, NY 10271
    By:  Lisa Fleischmann
        *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

        Jean Azor, who is currently incarcerated at Watertown Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and 28 U.S.C. 2241 §§ (b), (c)(3). Azor's state custody arises from a judgment of conviction entered on January 14, 2011 in Kings County Supreme Court after his guilty plea to attempted criminal possession of a weapon in the third degree. He was sentenced as a second felony offender to an indeterminate prison term of one and one-half to three years. This sentence is running consecutively to the

undischarged portion of a five-to-fifteen-year indeterminate prison sentence imposed in Kings County on July 6, 1998 after a jury verdict finding Azor guilty of robbery in the second degree.

For the reasons discussed herein, the portion of Azor's petition challenging the constitutionality of his conviction and sentence is dismissed without prejudice to re-filing when his conviction becomes final. The portion of his petition challenging the execution of his sentence is transferred to the Northern District of New York.

BACKGROUND

A.   *The Offense Conduct*

On July 6, 1998, Azor was sentenced to an indeterminate term of imprisonment of five-to-fifteen years. *People v. Azor*, 285 A.D. 555 (2d Dep't 2001). Azor was released to parole supervision on April 10, 2008.[1] On October 16, 2008, Azor was taken into custody in New York City following an arrest. Three plainclothes police officers in an unmarked car had pulled over Azor for allegedly making an illegal right turn from a left lane. After asking him to step out of the vehicle, the officers searched Azor and his vehicle and recovered a knife on his person and a firearm under the hood of the car.

Azor was released on bail two days after his arrest. Two months later, on December 18, 2008 Azor was taken into custody on a parole revocation warrant. Resp't Mem. of Law 4, ECF No. 7. Following a final parole revocation proceeding held on April 20, 2009, Azor's parole was revoked with a modified delinquency date of October 16, 2008. *Id.* The presiding Administrative Law Judge directed that he be held to the maximum expiration date of his 1998 sentence – August 3, 2011. The time remaining on the undischarged portion of his

---

[1] Azor was originally conditionally released to parole supervision on May 10, 2006. In 2007, his parole was revoked, and a delinquent time assessment of 12 months was imposed. Aff. of Robert C. Glennon ¶ 5, Resp't Ex B, ECF No. 7. On May 21, 2007, he was returned to the custody of the New York State Department of Corrections as a "conditional release violator." He was re-released to parole supervision in April 2008. While on parole this second time, Azor was arrested for the offense that forms the basis of this habeas petition.

sentence was, at that time, 2 years, 9 months and 17 days. Because Azor had a case pending in Kings County Supreme Court, he was not returned to the custody of the New York State Department of Corrections ("DOCCS")[2] as a parole violator; instead, he remained in local custody pending adjudication on the pending charges.

B.  *Azor's First Guilty Plea*

Azor's family retained counsel to represent him on the new criminal charges. *See* Transcript, Ex. T at 126. On July 19, 2010, Justice Thomas Carroll of the Kings County Supreme Court presided over an evidentiary hearing on a *Dunaway/Mapp* motion to suppress the firearm and knife seized during Azor's arrest.[3] Transcript, Ex. W at 47. The court heard witness testimony from one of the arresting officers and then adjourned the matter for argument and decision. *Id.*

Before the court issued a decision, Azor agreed to plead guilty to attempted criminal possession of a weapon in the third degree in exchange for a promised prison term of two to four years. Transcript of Plea, Ex. O at 76-77. Absent a guilty plea, his counsel indicated that he would be facing "a mandatory minimum of seven, [and a] maximum of 15." Ex. T at 136.

A day after he pled guilty, Azor sent a letter to the court proclaiming his innocence and asking to withdraw his plea. Ex. P at 94; Ex. U at 145. The court directed him to file a *pro se* motion for relief. In September 2010, Azor filed a *pro se* change of plea motion

---

[2] In April 2011, the New York State Department of Corrections ("DOCS") merged with the New York State Division of Parole. *See* Merger of Dep't of Corr. Serv. and Div. of Parole, http://www.doccs.ny.gov/FactSheets/DOCS-Parole-Merger.html (last visited: June 13, 2013). The combined organization is now referred to as the New York State Department of Corrections and Community Supervision ("DOCCS"). For continuity and convenience, I will refer to the Department of Corrections under its new acronym – DOCCS – throughout this memorandum.

[3] A *Dunaway/Mapp* hearing is held to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial. *See Dunaway v. New York*, 442 U.S. 200 (1979); *Mapp v. Ohio*, 367 U.S. 643 (1961).

pursuant to C.P.L. § 220.60(3). *See* Ex. Q. In a memorandum in support of his motion, Azor stated that his attorney, Stuart Rubin, "threaten[ed] and coerce[d]" him into pleading guilty and placed "undue pressure" on him to plead guilty.[4] *Id.* at 102, 103. Azor also stated that he did not understand the terms of the plea or his sentencing exposure. Ex. S at 116 ("[T]he plea offer of 2-4 [years] were (sic) never explained . . . by [the] attorney, and that by Law due to the 2-years[s] time owed on Parole[, the sentence] would actually become[] a 2-6 and not a 2-4.").

Justice Carroll held oral argument on the motion on October 15, 2012. *See* Ex. T. In support of his motion, Azor explained that he was innocent of the charge he pled guilty to and that he entered the plea without understanding that the time he owed on the parole violation would run consecutive to any time he would receive on the present change. *See id*. at 139 ("[T]he plea to parole time that I owe --- actually the plea of two-to-four would actually become two-to-six, not a two-to-four because of parole time by law. Two years already have been imposed on me already.") When Justice Carroll asked him if the two years outstanding on his 1998 sentence would run concurrently with the two-to-four year sentence on the 2008 arrest, Azor stated: "Not that I believe. With parole, what they will do is – if I took a plea, what they will do, they just took that time I owe them and put it in the back of that." *Id*. Azor's attorney indicated that this was his understanding as well.

Justice Carroll issued an oral decision granting Azor's motion to withdraw his plea on October 19, 2011,[5] and adjourned the matter to permit Azor's new counsel time to obtain the minutes of the suppression hearing and to prepare for trial.

C. *The Custody Pending the Change of Plea*

---

[4] Azor later repudiated these remarks, indicating that the pressure to plead guilty came from his family members because of a death in the family. Ex. U at 147-148. However, due to the allegations of improper coercion, Rubin sought to be relieved from the case so Azor could continue with un-conflicted counsel. The court agreed and appointed Amy Rameau from the 18-B panel to represent Azor.

[5] Justice Carroll issued a decision granting Azor's motion on December 17, 2010. Ex. V at 163-65.

4

On August 31, 2010 Azor was "administratively" returned to DOCCS custody as a parole violator even though he remained incarcerated on Rikers Island in the custody of the New York City Department of Corrections ("NYCDOC"). At this point, the New York State Division of Parole credited the interrupted portion of Azor's 1998 sentence with 620 days of parole jail time. In May 31, 2012, however, this parole time credit was reduced to zero days because the "the entire 620-day period . . . was credited as jail time to the sentence imposed in 2011." *See* Ex. I at 2.

On November 5, 2010, Azor reached the conditional release date on his 1998 sentence. Azor signed a release from the Division of Parole agreeing to abide by the conditions of release and listing his approved residence as Bellevue Men's Shelter. *See* Pet'r Ex. B, ECF No. 1. However, Azor remained in custody on Rikers Island even though conditionally released.

D.   *The Suppression Hearing Resumes*

The suppression proceeding that were suspended upon Azor's initial guilty plea resumed once that plea was withdrawn. On January 4, 2011, the court reopened the evidentiary hearing to permit Azor's new counsel the opportunity to question the police witness and to introduce additional evidence. *See* Ex. W at 49. That same day, Justice Carroll issued an oral decision holding that Azor's arrest and search were lawful and denying Azor's motions to suppress evidence. He adjourned the case for trial. *Id.* at 49-53.

E.   *Azor's Second Guilty Plea*

On January 14, 2011, the case was called for trial before Justice Patricia DiMango at Kings County Supreme Court. Immediately after the case was called, Justice DiMango had the following exchange with Azor:

> Court:   You are a predicate felon. Your prior felony is a violent predicate, but the [criminal possession charge] would be nonviolent . . . . The minimum you can get on attempted criminal possession in the third

5

|        |                                                                                                                                                                                                                                                                              |
|--------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|        | degree is one and a half to three years in jail. You have served that minimum. If you want to plead guilty with that minimum, I will ask the district attorney to make a phone call for you. That would mean that on the sentence date, you would go home. Do you want that or not? |
| Azor:  | Of course.                                                                                                                                                                                                                                                                   |
| Court: | You do?                                                                                                                                                                                                                                                                      |
| Azor:  | Yes.                                                                                                                                                                                                                                                                         |
| Court: | So can you make that phone call?                                                                                                                                                                                                                                             |
| DA:    | Yes, I will.                                                                                                                                                                                                                                                                 |
| Court: | Thank you.                                                                                                                                                                                                                                                                   |

Transcript, Ex. X at 57-58.

Immediately thereafter, Azor entered a guilty plea. During the plea allocution, Justice DiMango asked whether Azor wanted to "enter a plea of guilty to attempted criminal possession of a weapon in the third degree . . . in exchange for the promise that I will sentence you – oh, I can sentence you today and then they will calculate your time. Whenever your time is done, they will let you go." *Id.* at 60. To this, Azor responded, "All right." Azor's counsel affirmed that "[Azor] understands that he will receive a sentence one and a half to three years." *Id.* at 59. At the conclusion of the plea, Justice DiMango again stated "[T]his was a negotiated promise that we worked out today . . . I am completely satisfied with this plea. And you are remanded." *Id.* at 64-65.[6]

F.   *Azor is Returned To Department of Corrections and Community Supervision*

---

[6] At oral argument on the instant motion, counsel for Respondent stated: "It seemed to me that Justice DiMango was not aware that there was an undischarged period of time from the parole sentence when she accepted his plea . . . . So I can see that her remark that 'you will go home,' 'you are done,' could reflect that that is what would happen." Tr. of Oral Arg. at 10:8-19 (on file with the court).

On February 8, 2011 Azor was returned to DOCCS custody. When Azor was physically transferred to DOCCS custody after his 2011 sentence, NYCDOC credited Azor with 782 days of jail time credit for the dates October 16, 2008 to October 18, 2010 and December 18, 2008 to February 7, 2011. A Legal Date Computation Printout was generated without reference to his 1998 sentence, and pursuant to this certificate, Azor's conditional release date was set at February 22, 2011 and his maximum expiration set at February 22, 2012. *See* Decision & Judgment, Dec. 21, 2011, Ex. G at 4.

As mentioned above, in August 2010, the Division of Parole had credited Azor's 1998 sentence with 620 days of parole jail time for the period from December 18, 2008 until August 30, 2010. However, since DOCCS "treated [Azor's] sentence as running consecutively to the undischarged 1998 sentence pursuant to Penal Law § 70.25(2-a),"[7] it concluded that Azor could not receive both jail time credit and parole time credit for the same days he was incarcerated at Rikers Island. Resp't Br. at 5. Thus, on March 31, 2011, the Superintendent of the Facility where Azor was detained informed him that "The time owed from your previous sentence runs consecutively to you (sic) current sentence. Therefore 2 years, 2 mths (sic) and 15 days were added to your [Maximum Expiration] date." *See* Letter, Ex. C. Although DOCCS initially credited Azor with jail time credit, it then asked NYCDOC to amend its jail time certificate to ensure that a period of time credited to the 1998 sentence as parole jail time was not also credited to the 2011 sentence. *See* Ex. I.

G.      *Procedural History of Azor's Challenges to his Conviction and Sentence*

---

[7] This statute, entitled "Concurrent and consecutive terms of imprisonment," provides that "When an indeterminate or determinate sentence of imprisonment is imposed pursuant to section 70.04, 70.06, 70.07, 70.08, 70.10, subdivision three or four of section 70.70, subdivision three or four of section 70.71 or subdivision five of section 70.80 of this article, [the predicate felony statutes] or is imposed for a class A-I felony pursuant to section 70.00 of this article, and *such person is subject to an undischarged indeterminate or determinate sentence of imprisonment imposed prior to the date on which the present crime was committed*, the court must impose a sentence to run consecutively with respect to such undischarged sentence." (emphasis added)

7

1. *The Direct Appeal*

On May 3, 2011, the Second Department denied, with leave to renew, Azor's motions for poor person relief and appellate counsel. Azor was directed to provide information on how he originally paid for his retained counsel. *See* Ex. AA at 2; Ex. Z at ¶ 14. On December 12, 2011, the Appellate Division, Second Department granted Azor leave to appeal as a poor person and appointed Lynn W. Fahey as appellate counsel. *See* Ex. FF at 2. On January 13, 2013 Ms. Fahey filed an *Anders* brief with the Appellate Division indicating that there is "nothing in the record to indicate that [Azor's] guilty plea was not knowing, intelligent, and voluntary" and seeking leave to withdraw as counsel.[8] *Id.* at 7. On March 15, 2013, the State filed a brief urging the Appellate Division to affirm the conviction. *See* Ex. GG. Azor and counsel for the respondent confirmed at oral argument that the Appellate Division has given Azor until July 29, 2013 to submit a *pro se* supplemental brief in support of his direct appeal. Thus, that appeal remains pending. To date, the Appellate Division has not yet issued a decision on this appeal.

2. *The First § 440 Motion*

In July 2011, Azor filed a *pro se* motion to vacate his judgment of conviction and sentence pursuant to New York C.P.L. §§ 440.10 and 440.20, arguing that "the plea and sentence are illegal/invalid as a matter of law and/or in violation of Defendant's Constitutional rights as being <u>not</u> knowingly and intelligently made and entered into . . . ." Aff. in Support of Mot., Ex. Y at 1. Azor asserted that he was deprived of effective assistance of counsel because "Ms. Rameau [informed him] that the District Attorney consented to and was in accord with

---

[8] In *Anders v. California*, 386 U.S. 738 (1967), the Supreme Court held that court-appointed counsel who believe a case lacks merit must submit a brief outlining the case and any potential (albeit possibly frivolous) grounds for appeal, that the appellate court must independently review the case, and that a defendant must be allowed the right to appeal either *pro se* or by other counsel.

Defendant's parole time served and incurred as being <u>CONCURRENT</u> with any time imposed by the Court . . . [and] Judge DiMango . . . openly admitted knowledge of the time (approx.. 25 months Defendant has <u>already</u> served (by interjecting that "You have served that sentence. You are done.") *Id.* Azor sought the withdrawal of his plea, asserting that he "took this plea under the pretense that petitioner's Parole time would be running concurrent with the present indictment." *Id.* at 4. He noted that "he did not enter into any plea or sentence to have any aspect to consecutiveness." *Id.* at 3.

The State submitted a brief in opposition to the motion, arguing that "there are sufficient facts which appear on the record to allow adequate review on direct appeal." Ex. Z at 6-7. Pointing out that Azor has attempted to file an appeal (by seeking poor person status), the state urged the court to deny the claim as mandatorily procedurally barred pursuant to C.P.L. § 440.10(2)(b).[9] *Id.* In the alternative, the state argued that Azor's motion lacked merit.

On December 1, 2011, Justice DiMango issued a decision on the motion. Noting that the motion "relates solely to the validity of his plea and subsequent conviction," Justice DiMango did not address the State's argument that the issue ought to be raised on direct review and, instead, reached the merits of the question. Reviewing the facts, she stated; "[T]his court offered defendant a plea . . . with a promised sentence of one a one half to three years imprisonment . . . . The court did not specify whether defendant's sentence was to run consecutively or concurrently with the defendant's other previous, unrelated and undischarged sentence." *Id.* at 2. Justice DiMango further held that Azor's "claim that his plea was not voluntary lacks merit." *Id.* at 3. Specifically, she held that "when a court is required by statute

---

[9] C.P.L. § 440.10(2)(b) provides, in relevant part, "Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when . . . . (b) The judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal."

9

to impose a sentence that is consecutive to another, and the court does not say whether its sentence is consecutive or concurrent, it is deemed to have imposed the consecutive sentence." *Id.* at 3 (quoting *People ex rel. Gill v. Greene*, 12 N.Y.3d 1, 4 (2009)).  Further, she held that:

> [T]he failure of the court to inform [the] defendant at the time of guilty plea of the consecutive sentence did not undermine the constitutionality of the conviction because the requirement that the sentences run consecutively was a statutory mandate and not a part of the plea agreement.

*Id.* at 3-4.

Next, Justice DiMango held that the plea complied with due process.  She noted that courts are obliged only to "advise defendants of the direct consequences of their plea, but need not iterate every collateral consequence of the conviction." *Id.* at 4.  Concluding that "the action of [DOCCS] in calculating defendant's sentence is a collateral consequence," *id.* (citation omitted), she concluded the court had no obligation to inform Azor of this fact and, accordingly, that the plea comported with due process.

Last, the judge found that Azor's assertion about his counsel – i.e. that counsel misinformed him about the consequences of his plea – lacked credibility. *Id.* at 5.  Noting that Azor had previously indicated awareness of the consecutive nature of the two sentences in his previous motion to withdraw his plea and that he received a more favorable sentence after withdrawing his plea (1 ½ to 3 years in lieu of 2 to 4 years), Justice DiMango found his argument that he believed he was pleading to concurrent time to be "less believable." *Id.*[10]

Though this December 2011 decision informed Azor of his right to appeal the decision to the Appellate Division, Second Department, Azor did not file an appeal.

### 3.  *The Article 70 Habeas Proceeding*

---

[10] Justice DiMango also addressed Azor's argument that DOCCS improperly calculated his prison time and his request for "an order directing the agency to carry out the sentence . . . in accordance with defendant's concurrent sentencing arrangement."  She held that "[s]uch relief is not available through a C.P.L. § 440.10 motion to vacate judgment."  To the extent he wishes to challenge the computation of his sentence, Justice DiMango held that he must raise such allegations in an Article 78 proceeding.  Ex. AA at 5.

10

On May 2011, Azor filed a petition for a writ of habeas corpus pursuant to Article 70 of the Civil Practice Law and Rules, arguing that he is being detained due to a "jail time miscalculation" considering that he accepted a plea deal of 1 ½ to 3 years "to run conjointly." Pet. For Writ of Habeas Corpus, Ex. A at 2, 3.[11] In opposition to the motion, the New York Attorney General argued that habeas corpus is not available to "challenge events at one's plea and sentencing, as a motion to vacate judgment or to set aside sentencing is available pursuant to CPL Article 440." Ex. B ¶ 15.

The habeas proceeding was heard by Acting Supreme Court Judge S. Peter Feldstein of Franklin County. He sought additional briefing to clarify, *inter alia*, whether NYCDOC had issued a jail-time certificate for 782 days of jail-time credit. In its response, the State explained, *inter alia*, that NYCDOC did, indeed, issue a jail time certificate giving Azor 782 days of jail-time credit for his time in Rikers, but that DOCCS "continues to try to get NYC to reduce the certificate" so as not to give Azor double credit for time credit he received on his parole. Ex. E ¶ 7 (internal quotation marks omitted).

On December 20, 2010, the court issued a decision denying Azor's habeas petition. First, the court noted that Azor's assertion that his sentence must run "conjointly" is "without legal significance" and must be rejected. *Azor v. Perez*, Decision & Judgment, Ex. G at 4. Based on its review of Azor's sentencing minutes, Judge Feldstein concluded that "the 2011 sentencing court did not specify whether its sentence was to run concurrently or consecutively with respect to the undischarged portion of the 1998 sentence." *Id.* at 5. Under such circumstances, he concluded that "DOCCS officials did not err in calculating [Azor's] 2011

---

[11] This proceeding was brought under New York C.P.L.R. § 7002(a) which permits one "illegally imprisoned or otherwise restrained in his liberty within the state" to institute habeas corpus proceedings. "The drafters of the CPLR made no attempt to specify the circumstances in which habeas corpus is a proper remedy." *See* Practice Commentaries to McKinney's CPLR § 7001, by Vincent C. Alexander, Article 70 (Habeas Corpus).

11

sentence as running consecutively . . . notwithstanding the sentencing court's silence on this point." *Id.* (citations omitted). Then, noting that DOCCS calculated Azor's release dates to be June 8, 2012 (conditional release date) and March 4, 2014 (maximum expiration date), Justice Feinstein concluded that there is "no error" in the manner or outcome of DOCCS's calculation.

On April 11, 2012, Azor filed a *pro se* appeal of the decision. *See* Ex. H. However, soon after Judge Feldstein's decision, DOCCS performed another sentence recalculation. As a result of this recalculation, Azor's conditional release date was pushed back by more than three months and his maximum expiration date was pushed back by more than four months. *See* Ex. J at 1. In the Attorney General's opposition brief to Azor's appeal, it informed the court of this recalculation and urged it to dismiss the appeal as moot:

> Under the calculation reviewed by the Supreme Court, [Azor's] maximum expiration date was May 11, 2014 and his earliest conditional release date was August 15, 2012. Under the revised calculation these dates have been pushed back to September 27, 2014 and December 6, 2012 respectively. While this new calculation arguably may moot this proceeding, we will nevertheless brief the merits because, although the specific dates have changed, the manner in which DOCCS performed its calculation is the same. . . . .

Ex. J at 1-2.

In support of its position, the Attorney General submitted a 7-page statement from Richard DeSimone, the Associate Counsel from the DOCCS Office of Sentencing Review that purported to explain "the manner in which this Department calculated [Azor's] release dates," *see* Ex. I.

On August 26, 2012, the Appellate Division, Third Department issued a decision holding that, based on the State's recalculation of Azor's conditional and maximum expiration

release date, "his challenge to the original time computation is now moot."[12] Ex. L. Accordingly, the appeal was dismissed. Azor did not seek leave to appeal this decision to the New York Court of Appeals.

As of today, Azor's conditional release date and maximum expiration date are both set for September 27, 2014.[13] It is not clear from the record or from oral argument what occurred since July 2012 that required Azor's conditional release date to be pushed back again after Richard DeSimone's July 2012 letter. *See* Ex. I.

    4.  *The Second § 440 Motion*

In July 2012, Azor filed a second § 440 motion. Specifically, he moved under C.P.L. § 440.10(1)(h) to vacate his sentence, arguing that his defense counsel provided constitutionally defective counsel at his suppression hearing. Ex. BB. The State opposed the motion, arguing that a § 440.10 motion is an improper forum to raise an issue that can be raised on direct appeal and urging the court to dismiss it as mandatorily procedurally barred. *See* Ex. CC at 8.

On September 18, 2012, Judge DiMango denied the motion on substantive grounds, holding that Azor had forfeited his objections to his counsel's performance by pleading guilty. She also denied the motion on procedural grounds, holding that the claim is barred from collateral review pursuant to C.P.L. § 440.10(2)(b) since it raises an issue suitable for direct review. *See* Ex. DD. Azor did not file an appeal from this determination.

H.  *The Present Petition*

---

[12] "In general an appeal will be considered moot unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment." *Hearst Corp. v Clyne*, 50 N.Y.2d 707, 713-714 (1980). An exception to the mootness doctrine exists "which permits the courts to preserve for review important and recurring issues which, by virtue of their relatively brief existence, would be rendered otherwise nonreviewable." *Id.* at 714 (citation omitted).

[13] *See* DOCCS Inmate Lookup, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited: June 17, 2013).

On November 20, 2012, Azor filed the instant petition for federal habeas relief. In his petition, Azor asserts that Justice DiMango offered him a "plea deal of 1 ½ to 3 years with (my credited time) of (25-months) that I had in already had in." Habeas Petition at 4-5, 7, ECF No. 1.  He asserts that DOCCS recalculated his sentence to run consecutively, and that it lacked authority to do so in light of the state court's promise that his sentence run concurrently and because, at the time he pled guilty, he had already been issued parole jail time for the time he was detained on Rikers Island.  Azor seeks an evidentiary hearing to explore the facts and circumstances of his unconstitutional conviction, and argues that he is being illegally and unconstitutionally held in state custody past the expiration of his release.

By order dated May 10, 2013, I directed the State to file the complete state court record.[14]  I heard oral argument of the petition on June 12, 2013.  Azor appeared by videoconference from the facility in which he is incarcerated.  For the reasons articulated below, the petition is dismissed in part and transferred to the Northern District of New York in part.

## DISCUSSION

Azor is a *pro se* litigant. Accordingly, I must construe his submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted).  Azor is not, however, exempt "from compliance with relevant rules of procedural and substantive law," *Boddie v. N.Y. State Div. of Parole*, 285 F.Supp.2d 421, 426 (S.D.N.Y. 2003) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

---

[14] Specifically, I directed the State to supplement the record to include the following: "(1) complete record from petitioner's direct appeal of his 2011 conviction; (2) transcript of proceedings held before Hon. Thomas Carroll in 2010 (July - December 2010); (3) petitioner's September 7, 2010 notice to withdraw his guilty plea, the People's response, and any decision by the court in response to this motion; and (4) the complete record from petitioner's C.P.L. Section 440.10 motions filed in July 2011 and May 2012." Order, May 10, 2013.

14

Read liberally, Azor's petition makes two arguments in support of relief. First, he contends that Judge MiMango promised that his 2011 sentence would run concurrent with his 1998 sentence; accordingly, he contends that DOCCS lacked authority to calculate his sentences as running consecutively. In the alternative, Azor argues that, since his guilty plea was induced by a promise that his sentence would be concurrent, the failure to enforce this promise renders his guilty plea involuntary.[15] Second, even assuming his sentence was properly calculated to run consecutively, Azor argues that DOCCS failed to credit him with the jail and parole time to which he is due and that, as a result, he is being detained past his release date. I address these arguments in turn.

A. *The Exhaustion Requirement*

The exhaustion requirement, codified at 28 U.S.C. §§ 2254(b) and (c), obligates a federal habeas petitioner to exhaust state judicial remedies before seeking relief from a federal court. To exhaust state remedies, a petitioner must "fairly present" his federal constitutional claims to the highest state court with jurisdiction over them. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation marks and alterations omitted); *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1981) (en banc). This requirement, which "springs primarily from considerations of comity" between the federal and state systems, affords the state system "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Daye*, 696 F.2d at 191.

B. *Azor's Claims for Relief*

    1. *Constitutional Challenges to his Conviction and Sentence*

---

[15] Respondents' brief attempts to bypass this argument, asserting in a footnote: "Petitioner does not appear to argue that his 2011 guilty plea was involuntary . . . ." Resp't Br. at 24, n.6. I disagree.

15

Azor alleges that he accepted a plea falsely believing that he was being offered a stipulated agreement that he was "done" with any outstanding prison time. Both the federal and New York State constitutions require that a guilty plea must be voluntary, knowing and intelligent. *Brady v. United States*, 397 U.S. 742, 747-48 (1970); *People v. Moissett*, 76 N.Y.2d 909, 910-11 (1990); *People v. Harris*, 61 N.Y.2d 9, 17 (1983). A court has the constitutional duty, under the Due Process Clause, to ensure that a defendant, before pleading guilty, "has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see also Kercheval v. United States*, 274 U.S. 220, 223 (1927) (due process requires that defendant plead guilty "with a full understanding of the consequences"). In order to accept a guilty plea, the court must ensure that the plea represents an "intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Where a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Boykin*, 395 U.S. at 243 n. 5 (1969). In *Santobello v. New York*, 404 U.S. 257, 262 (1971), the Court held, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled."

Azor's challenge to the voluntariness of his plea is not cognizable on federal habeas corpus review at this time. Azor has raised the issue before the Appellate Division on his direct appeal, but that court has not yet had an opportunity to consider the question, and thus the alleged federal defect in Azor's sentence has not yet been fairly presented to the highest state court, as required by 28 U.S.C. § 2254.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") gives a state prisoner one year to file a federal habeas petition, "starting from the date on which the judgment became final." *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013) (citation omitted).

16

Generally, the one-year clock begins "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). A state judgment becomes final when "time for seeking review with the State's highest court expired." *Gonzalez v. Thaler*, 132 S.Ct. 641, 653 (2012). Thus, as I explained to Azor at oral argument, if he does not prevail in the state court, after exhausting his claims in the New York Court of Appeals, he will have one year within which to re-file his federal petition for habeas relief.

        2.     *Azor's Challenge the Calculation of his Parole and Jail Credit*

Azor's petition also raises questions as to the propriety of the proper calculation of his jail and parole time credits. It is confusing how the DOCCS reached different conclusions as to Azor's projected conditional release date. Specifically, it is unclear what factors influenced the change in Azor's conditional release date from December 6, 2012 (as of July 2012) to September 27, 2014 (as of today). *See supra* at Section G.3.

Challenges to the "execution of [a] sentence," such as calculations by the Department of Corrections of the credit to be given for periods of detention, "must be addressed to a court in the district in which [the petitioner] is incarcerated and the petitioner must first exhaust all administrative remedies." *Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997); *see also Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003). Thus, the proper venue for a motion brought under § 2241 is the district of confinement.

Inasmuch as Azor's petition contends that his sentence has been improperly computed as a result of denying him credit for detention while incarcerated pending his guilty plea, I find that his challenge relates to the execution of his sentence. This Court has the discretion to either cure the defect in venue by ordering transfer to a district where the case could have been brought or to dismiss the action pursuant to 28 U.S.C. § 1406(a). *See S & L*

17

*Birchwood, LLC v. LFC Capital, Inc*, 752 F.Supp.2d 280, 283 (E.D.N.Y. 2010) (citation omitted). In deciding between these options, courts should be mindful to "facilitate the timeliest disposition of the case on the merits." *Id.*[16] In light of his *pro se* status and in the interest of timely resolution, the Clerk of Court is directed to transfer this portion of Azor's petition challenging the calculation of his parole and jail times credits to the United States District Court for the Northern District of New York. 28 U.S.C. § 1406(a).

## CONCLUSION

For the reasons stated above, the portion of Azor's petition challenging the consecutive nature of his 2011 sentence and the voluntariness of his plea is dismissed without prejudice; Azor may re-file the petition after he exhausts his state court remedies. His remaining claim, a challenge to the execution of his sentence, is not properly venued in this Court. Accordingly, the Clerk of Court is respectfully directed to transfer that petition to the Northern District of New York, which has jurisdiction over that particular claim.

So ordered.

John Gleeson, U.S.D.J.

Dated: June 18, 2013
      Brooklyn, New York

---

[16] Because I concluded that this challenge is improperly venued in this district, I need not consider whether this claim is exhausted, or reach the merits of the respondent's arguments in favor of outright dismissal.